

02/07/2013

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TEXAS
BEAUMONT DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | |
| **GRACE W. ENMON** | § | Case No. 12-10268 |
| xx-xxx3381 | § | |
| | § | |
| | § | |
| Debtor | § | Chapter 11 |

## MEMORANDUM OF DECISION

The Court has heard and considered the Motion for Sanctions (the "Motion") filed by Prospect Capital Corporation, seeking an assessment of sanctions against the dismissed Debtor and Debtor-in-Possession, Grace W. Enmon (the "Debtor"), and her general bankruptcy counsel of record, Jesse Blanco ("Blanco"), pursuant to Fed. R. Bankr. P. 9011, 28 U.S.C. §1927, and the inherent authority of the Court, based essentially upon allegations that the Debtor's bankruptcy petition was filed for the improper purpose of unnecessarily delaying the prosecution of a fraudulent transfer action that was on the eve of trial in the Southern District of Texas. At the conclusion of the hearing, the Court took the matter under advisement. This memorandum of decision disposes of all issues pending before the Court.[1]

*Background*

The former Debtor, Grace W. Enmon, is an elderly woman whose son, Michael Enmon, is a judgment debtor to the Movant, Prospect Capital Corporation. Michael

---

[1] This Court has jurisdiction to consider the Motion pursuant to 28 U.S.C. §1334(b) and 28 U.S.C. §157(a).

Enmon's judgment debt to Prospect arises from a $2.3 million judgment entered on October 15, 2008 by the United States District Court for the Southern District of New York. As one means to uncover assets to satisfy its judgment, Prospect Capital initiated a lawsuit in February 2011 before the United States District Court for the Southern District of Texas (the "Southern District Litigation"), alleging that Michael Enmon had attempted to shield his assets from execution by engaging in fraudulent transfers of property to his wife, Kari Enmon, to his mother, Grace Enmon, to his family trust, and to other entities controlled either by him or his co-defendants. The trial was set to begin on May 7, 2012.

This Southern District Litigation was clearly not going well for the Defendants. On April 11, 2012, Michael Enmon, Kari Enmon and one of their companies had been found in contempt of court for having violated the Court's preliminary injunction precluding the continued transfers of property. Accelerated discovery regarding these preliminary injunction violations was in progress when Grace Enmon filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code in this Court on April 25, 2012, thereby invoking the automatic stay and nullifying the May 7 trial setting in the Southern District Litigation. Attorney Jesse Blanco electronically filed the voluntary petition on the Debtor's behalf. The $5,000 retainer apparently required by Mr. Blanco was paid by Michael Enmon.

When the Debtor's schedules were filed on May 9, 2012, they revealed a curious combination of financial information. On the one hand, the Debtor's schedules also revealed a debt of $2.2 million to Mutual of Omaha as a "guarantor" of certain

indebtedness, partially secured by the Debtor's ownership of certain mineral interests attributable to a 163-acre tract of land, valued at $200,000, that the Debtor had allegedly purchased from her son through her execution of an $80,000 no-interest promissory note. The Debtor's acquisition and subsequent encumberment of that mineral property, and her subsequent disposition of a portion of it at a substantial profit of approximately $620,000, was one of the transactions under scrutiny in the Southern District Litigation.

In every other respect, the Debtor's schedules and statements outlined a very nominal estate, with very nominal income. The Debtor reported that she was employed at Luby's Cafeteria, earning net income of only $938 per month, together with an additional $558 per month in Social Security income and $80 in monthly mineral royalties, with minimal expenditures. The Statement of Financial Affairs further confirmed that the Debtor had earned only $12,000 in salary and $7,000 in Social Security benefits in the preceding year. She listed an unencumbered homestead in Groves valued at $60,000. She listed only two unsecured creditors — a VISA account with a $500 balance and the listing of the Movant, Prospect Capital, as the holder of a disputed, contingent claim for $2.287 million. With the one notable exception, her schedules revealed very nominal non-exempt assets, including $50 cash and $526 in checking account proceeds. It was under these financial circumstances that this Debtor, under the guidance of Blanco, elected to file a Chapter 11 voluntary petition.

With its May 7 trial setting scuttled by the filing of the Chapter 11 petition and the resulting invocation of the automatic stay, Prospect Capital moved for modification of the

automatic stay three weeks after the bankruptcy filing in order to authorize the continued prosecution of the Southern District Litigation. Upon the filing of an objection by the Debtor, the Court conducted an evidentiary hearing on the stay motion on June 26, 2012. At the conclusion of the hearing, the Court found that the dispute could be more effectively and expeditiously litigated before the Southern District court. Thus, the Court modified the automatic stay so as to allow the continued prosecution of the Southern District Litigation, including the return of any particular res found to have been improperly transferred to the Debtor, but precluding any post-judgment execution upon any money judgment that might be entered against the Debtor without a further order.

One day later, on June 27, 2012, the United States Trustee filed a motion to dismiss the Debtor's Chapter 11 case on various grounds, including the allegation that the Debtor filed the case as a litigation tactic to forestall the Southern District Litigation and that the filing was performed in bad faith. The Debtor did not file an objection to the motion or otherwise contest the Trustee's allegations. In fact, Blanco, on behalf of the Debtor, subsequently executed an agreed order that dismissed this Chapter 11 case with prejudice to refiling for a period of 90 days. That dismissal order was entered by the Court on July 16, 2012.

On August 8, 2012, Prospect Capital filed the current post-dismissal motion for the imposition of sanctions against the Debtor and Blanco, contending that the bankruptcy petition was filed in bad faith for the sole purpose of causing unnecessary delay of the Southern District Litigation. The motion seeks the imposition of sanctions under Rule

9011, 28 U.S.C. §1927, and this Court's inherent authority.

*Discussion*

Rule 9011 of the Federal Rules of Bankruptcy Procedure provides in relevant part:

(b) *Representations to the Court.* By presenting to the Court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information and belief, formed after an inquiry reasonable under the circumstances —

> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

>    (c) *Sanctions*. If, after notice and a reasonable opportunity to respond, the court determines that subdivision (b) has been violated, the court may, subject to the conditions stated below, impose an appropriate sanction upon the attorneys, law firms, or parties that have violated subdivision (b) or are responsible for the violation.

FED. R. BANKR. P. 9011(b)-(c).

The general jurisprudence regarding Rule 9011 and its civil rule counterpart, Rule 11, is well established. Because Rule 9011 is substantially identical to Federal Rule of Civil Procedure 11, courts often refer to Rule 11 jurisprudence when considering sanctions under Rule 9011. *In re Pratt*, 524 F.3d 580, 586 n. 19 (5th Cir. 2008). The motion for sanctions was timely brought by Prospect Capital after the entry of the case dismissal order and a federal court may impose sanctions after a case dismissal "since Rule 11 is designed to punish a party who has already violated the court's rules." *FDIC v. Maxxam, Inc.,* 523 F.3d 566, 577 (5th Cir. 2008). The Court further notes that Prospect Capital was not required to comply with the "safe harbor" provision set forth in Rule 9011(c)(1)(A) that requires service of the motion 21 days prior to its filing because, pursuant to the express terms of that Rule, the filing of a petition is excluded from the scope of that prerequisite.[2]

"The central goal of Rule 11 is to deter abusive litigation practices." *Corley v.*

---

[2] Fed. R. Bankr. P. 9011(c)(2)(A) states, in relevant part, that the "motion for sanctions may not be filed with or presented to the court unless, within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected, except that this limitation shall not apply if the conduct alleged is the filing of a petition in violation of subdivision (b)."

*Rosewood Care Ctr., Inc.*, 388 F.3d 990, 1013 (7th Cir. 2004); *accord, Thomas v. Capitol Sec. Servs., Inc.*, 836 F.2d 866, 884 (5th Cir. 1988).  The Rule places its focus upon the conduct of the parties — not the result of litigation.  Prospect Capital contends that the filing of the bankruptcy petition by the Debtor and Blanco, and the invocation of the automatic stay occasioned thereby, constituted a violation of Rule 9011(b)(1) because it was presented for the improper purpose of unnecessary delay.  This is generally recognized as the subjective component of Rule 9011.  As one court has observed,

> The focus of a claim under the "improper purpose" clause is on why the nonmovant filed the legal pleading at issue.  Because direct evidence of motive, intent or purpose is rarely available at hearings, the Court must look to objectively ascertainable circumstances that support an inference of improper purpose under Rule 9011(b)(1).

*In re Dental Profile, Inc.*, 446 B.R. 885, 900 (Bankr. N.D. Ill. 2011); *see also Maxxim*, 523 F.3d at 581 [with the Fifth Circuit affirming the directive that a court should be looking for "objectively ascertainable circumstances that support an inference that a filing ... caused unnecessary delay"].

      The Court will first examine the participation of Blanco in the filing of the bankruptcy petition.  The petition was signed and filed by electronic means by Blanco.  Blanco is a knowledgeable bankruptcy attorney with considerable experience in Chapter 11 cases.  He knows the "nomenclature."  He is articulate about bankruptcy concepts.  He is undoubtedly capable of making a reasoned evaluation regarding the propriety of a bankruptcy filing.

At the sanctions hearing, Blanco defended the legitimacy of the filing as an attempt to address the "inchoate" claim likely to arise in favor of Prospect Capital and against the Debtor upon the completion of the Southern District Litigation.[3] He noted that bankruptcy filings often result in an interruption of pending litigation without invoking bad faith implications and testified that he advised a Chapter 11 filing for this Debtor because of the need to protect certain non-exempt property of the Debtor that would necessarily be relinquished in a Chapter 7 case. However, the record objectively shows otherwise.

While it is true that the filing of a bankruptcy petition often delays pending litigation due to the invocation of the automatic stay, it does so for a proper purpose — to facilitate the financial rehabilitation or liquidation of a debtor. Notwithstanding Blanco's assertion that the case dismissal (to which the Debtor did not object) precluded further investigation into exactly what type of Chapter 11 plan would be proposed, Blanco knew or should have known that the financial circumstances surrounding this Debtor precluded any effective reorganization attempt in Chapter 11. Further, there was nothing to preclude a Chapter 7 filing because all of the non-exempt property listed by the Debtor in her schedules was fully encumbered. There were no unencumbered assets to be utilized in any beneficial way, regardless of whether the Debtor elected to seek a reorganization

---

[3] Blanco and his co-horts were prescient about one thing — the trial in the Southern District Litigation resulted in the entry of a final judgment on December 17, 2012 that voided the transfers of certain properties to the Debtor and to others as fraudulent and assessed an award of attorney's fees against Michael Enmon and Kari Enmon, jointly and severally, in the amount of $200,000.

or liquidation. There was no sufficient stream of income nor any unencumbered non-exempt property to facilitate any potential payout of claims.

Indeed, it was only when Prospect Capital sought these sanctions that Blanco concocted his "claims adjudication" justification for the filing of the Chapter 11 case. Indeed, such an argument is not even contained in the response to the sanctions motion. His true intentions are indicated, however, by his earlier arguments to the Court during the automatic stay hearing conducted in June 2012. At that hearing, he made two primary assertions on behalf of the Debtor: (1) that the Court, "as a court of equity," should continue the stay hearing for at least two months to allow settlement talks to occur between the litigating parties and for valuation issues to be investigated; and (2) that the bankruptcy filing occurred in general because the Debtor believed this Court to be a more preferable forum for the determination of the fraudulent transfer claims.[4] Blanco acknowledged throughout that stay hearing that the bankruptcy petition was filed primarily so that new litigation could be initiated by the Debtor before this Court by which the Debtor would seek to validate the transfers which had been challenged in the Southern District Litigation for the past five years. Further, though not specifically admitted, the case was filed as a Chapter 11 as a matter of necessity, notwithstanding the Debtor's limited resources and lack of need for financial reorganization, in order to ensure absolute control over the contemplated litigation by the Debtor (or her counsel).

---

[4] Blanco claimed that the filing was legitimate and the stay should remain in place "so we can get justice in a court that deals with valuation." See *Transcript of June 26, 2012 Hearing* [dkt #47] at p.12, lines 20-21.

There was no substantive discussion at the stay hearing about proper rehabilitation objectives sought to be achieved by seeking Chapter 11 relief because there were none. There was no discussion at that hearing about the Debtor's reasonable prospects for reorganization because there was nothing to reorganize. As proffered by Blanco at the hearing, it is true that Chapter 11 does authorize liquidation under Chapter 11 in appropriate circumstances, but here there was no objectively reasonable basis for seeking either goal in Chapter 11 under these circumstances.

Indeed, legitimate bankruptcy objectives had nothing to do with the purpose of the filing of the petition. The primary purpose of the filing of the bankruptcy petition was to impose a delay in the progress in the Southern District Litigation.[5] Blanco was paid $5,000 by Michael Enmon to accomplish such a delay in the Southern District Litigation and, for a limited time, he succeeded in that task. However, by improperly invoking the automatic stay for the sole purpose of achieving a litigation objective, rather than in a good faith rehabilitation attempt, the filing of a Chapter 11 bankruptcy petition for this Debtor by Blanco constituted an abuse of the bankruptcy process and violated Bankruptcy Rule 9011(b)(1).

As for the request for sanctions against the Debtor, however, Prospect Capital has failed to present the requisite evidentiary foundation to support the imposition of sanctions against her. An attorney signing a document is typically the person against

---

[5] It might also have been sought to escape from the consequences of having failed to meet the deadline for the designation of a valuation expert in that fraudulent transfer case.

whom a Rule 9011 sanction should be imposed and a represented party should not generally be sanctioned in the absence of circumstances indicating that the client is personally aware of, or responsible for, the proscribed action. *Topalian v. Ehrman,* 3 F.3d 931, 935 n.3 (5th Cir. 1993). Although the Court has confirmed that the Debtor did tender the executed declaration required in this district to corroborate the electronic signature of the Debtor presented on the petition, the evidence of her actual involvement in this scheme is limited. There is no evidence that she played any significant role in this plan, other than signing where her son and her lawyer told her to sign. There is no evidence that she even understood the ramifications that a bankruptcy filing might impose upon her. She simply followed the directives of her son. Though she is not completely blameless in this venture, the evidence does not demonstrate that sanctions against Mrs. Enmon are warranted in this instance.

Those observations do not apply to Blanco. Indeed, the most reasonable inference from the totality of the circumstances presented is that Blanco willingly participated in a scheme by Michael Enmon to use a bankruptcy filing by his mother to derail the Southern District Litigation. The Enmon Defendants were looking for an escape from the series of reversals occurring in the Southern District Litigation. They consulted with Blanco who, as an experienced bankruptcy practitioner, should have rejected the contemplated course of action. No objective evaluation by a seasoned bankruptcy lawyer would validate the use of Chapter 11 as a liquidation or rehabilitation vehicle for this Debtor under these circumstances. However, Blanco apparently shed the skin of objective, ethical behavior

rather easily and facilitated the planned escape through the improper use of the bankruptcy process.  Such misconduct cannot be endorsed nor condoned by this Court.

As for the actual sanction to be imposed against Blanco, the Court must look to Rule 9011(c)(2) which states:

> (2) *Nature of Sanction; Limitations*. A sanction imposed for violation of this rule shall be limited to what is *sufficient to deter repetition* of such conduct or comparable conduct by others similarly situated. Subject to the limitations in subparagraphs (A) and (B), the sanction may consist of, or include, directives of a non-monetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of *some or all* of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

FED. R. BANKR. P. 9011(c)(2)(emphasis added).  An award of attorney's fees incurred in pursuit of the sanctions motion itself is also specifically permitted.  Rule 9011(c)(1)(A).

Prospect Capital presented testimony that an award of $35,500 was warranted under these circumstances, although that amount exceeds by $9,250 the amount requested by the motion and it considerably exceeds the documented time and expenses incurred by the attorneys for Prospect Capital on issues raised by the bankruptcy filing.  This Court has considerable experience in evaluating fee requests and it has closely evaluated the fee exhibit tendered by the Movant in this case.  Many of the time entries submitted pertained to ongoing trial preparation activities for the Southern District Litigation which would have had to have been performed in any event and were not proximately caused by, nor even related to, the problems arising from the improper bankruptcy filing.  The chronological scope of the delay was also limited since the case was dismissed in July

2012 and the Southern District Litigation was quickly placed back upon a trial schedule that resulted in a final adjudication in December 2012. The Court must also remain cognizant of the Rule 9011 standard that the sanction to be imposed should be limited to an amount sufficient to deter repetition of the improper conduct by the respondent or others similarly situated.

*Conclusion*

Therefore, based upon a review of the totality of the evidence and in light of the proper Rule 9011 standards, the Court finds that the motion should be granted to the extent that sanctions should be awarded in favor of Prospect Capital Corporation and against Jesse Blanco pursuant to Fed. R. Bankr. P. 9011 in the amount of $17,615.66, consisting of reasonable attorneys' fees in the amount of $16,750.00, which includes fees and expenses incurred in bringing the sanctions motion, plus expenses in the amount of $865.66, incurred as a direct result of the Rule 9011 violation by Blanco. Blanco shall be given a period of 45 days from the date of the entry of the sanctions order to tender the required sanction amount to Prospect Capital Corporation, through its counsel of record in this proceeding, or upon any longer alternative installment schedule to which Prospect Capital Corporation may agree in its sole discretion. All other relief sought by the motion, including the sanctions sought to be assessed against Grace Enmon and the alternative requests for relief against Blanco under 28 U.S.C. §1927 and the Court's inherent authority, shall be denied.

This memorandum of decision constitutes the Court's findings of fact and conclusions of law[6] pursuant to Fed. R. Civ. P. 52, as incorporated into contested matters in bankruptcy cases by Fed. R. Bankr. P. 7052 and 9014. A separate order will be entered which is consistent with this opinion.

Signed on 02/07/2013

*Bill Parker*

THE HONORABLE BILL PARKER
UNITED STATES BANKRUPTCY JUDGE

---

[6] To the extent that any finding of fact is construed to be a conclusion of law, it is hereby adopted as such. To the extent any conclusion of law is construed to be a finding of fact, it is hereby adopted as such. The Court reserves the right to make additional findings and conclusions as necessary or as may be requested by any party.